**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**RICKY SMITH**                                                                                       **PETITIONER**
**ADC #133989**

**VS.**                     **CASE NO. 5:11CV00072-BSM-BD**

**RAY HOBBS, Director,
Arkansas Department of Correction**                                 **RESPONDENT**

## RECOMMENDED DISPOSITION

**I.**      **Procedure for Filing Objections**

The following Recommended Disposition ("Recommendation") has been sent to United States District Court Judge Brian S. Miller. Mr. Smith – or any party – may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

    Mail your objections and "Statement of Necessity" to:

        Clerk, United States District Court
        Eastern District of Arkansas
        600 West Capitol Avenue, Suite A149
        Little Rock, AR 72201-3325

**II.**     **Background**

    In 2005, a Jefferson County jury found Petitioner Ricky Smith guilty of murdering Nicole Sharp. Although Mr. Smith was charged with first-degree murder, the jury found him guilty of second-degree murder, and sentenced him to twenty years in the Arkansas Department of Correction.

    Mr. Smith appealed his conviction to the Arkansas Court of Appeals, which affirmed on June 20, 2007. *Smith v. State*, No. CACR 06-169, 2007 WL 1765540 (Ark.App June 20, 2007). Mr. Smith then filed a Rule 37 petition for post-conviction relief with the trial court. The trial court denied the Rule 37 petition, and Mr. Smith appealed. On March 18, 2010, the Arkansas Supreme Court affirmed the trial court's denial of the Rule 37 petition. *Smith v. State*, 2010 Ark. 137, 2010 WL 1006273 (Ark. March 18, 2010).

    Mr. Smith filed the pending habeas petition on March 24, 2011. (#1) On June 27, 2011, Mr. Smith requested a stay, which the Court granted. (#15 and #16) Mr. Smith reopened this case on October 18, 2011. (#19 and #20)

    In addition to his original petition, Mr. Smith has also filed an amended petition and several supplements. (#9, #22, #24, #26, #27, and #28) He asks the Court to

overturn his conviction because: (1) jurors had improper knowledge of the case and personal relationships with the prosecutors, Pine Bluff Police Department, State Police, and the Jefferson County Sheriff's Department; (2) DNA evidence proved that Mr. Smith was not connected to the murder; (3) three key State witnesses lied under oath on several occasions; and (4) State Crime Lab evidence contradicted witness testimony. (#1) In his Amended Petition, Mr. Smith alleges that the murder charge for which he was convicted was lodged in retaliation for his filing an earlier civil rights lawsuit. (#9) Respondent Hobbs argues that Mr. Smith procedurally defaulted his first claim, and the remaining claims have no merit. (#13)

### III. Standard of Review

Federal courts provide limited review of claims adjudicated in state court. "When a claim has been adjudicated on the merits in state court, habeas relief is warranted only if the state court proceeding resulted in: (1) a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Bucklew v. Luebbers*, 436 F.3d 1010, 1015 (8th Cir. 2006) (quoting 28 U.S.C. § 2254(d)(1) and (2)); see also *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462 (2005).

A state court decision is contrary to federal law only where the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a

question of law or if the state court decides a case differently than the [United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495 (2000).

A decision is an unreasonable application of federal law only "if the state court identifies the correct governing legal principle from the [United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. It is not enough that a federal court might have applied federal law in a manner different from the state court. Rather, the state court's application must have been objectively unreasonable. *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (citation omitted).

Furthermore, in a federal habeas proceeding, a state court's factual findings are entitled to a presumption of correctness, absent procedural error. Those findings may be set aside only if they are not fairly supported by the record. *Nicklasson v. Roper*, 491 F.3d 830, 841 (8th Cir. 2007) (quoting *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769 (1995)).

**IV.   Discussion**

On March 14, 2003, the nude body of Nicole Sharp was found in a ditch in Jefferson County.[1] An autopsy determined she had been strangled. Her hands had been

---

[1] Unless noted otherwise, the factual background is taken from Mr. Smith's direct appeal. *Smith v. State*, No. CACR 06-169, 2007 WL 1765540 (Ark.App June 20, 2007).

tied. The Jefferson County Sheriff's Department investigated the crime and arrested Mr. Smith on March 21, 2003, and charged him with first-degree murder. The State *nolle prossed* the charge on October 1, 2003, due to the limited and inconsistent evidence against Mr. Smith.

After further investigation by the Arkansas State Police, the State refiled the first-degree murder charge against Mr. Smith on January 28, 2005. The Arkansas State Police investigation had uncovered an additional witness, in addition to a "burn pile" at a deer camp that corroborated some witnesses' statements.

The State's case against Mr. Smith relied primarily on the testimony of three eyewitnesses. According to their testimony, Betty McVay, Brenda Abeyta, James Scroggin, Mr. Smith, and Ms. Sharp were all at the home of Mr. Scroggin's mother on March 13, 2003.[2] The three women were at the residence to provide sexual favors in exchange for crack cocaine.

During testimony at trial, Ms. McVay admitted that she was a prostitute, a convicted felon, and a crack cocaine addict. She also admitted that she had previously lied to police about the murder. She testified that Mr. Smith attacked Ms. Sharp after accusing her of stealing some of his drugs. Ms. McVay stated that she became frightened during the attack and left the room. Mr. Smith then left and said, "I think I killed the

---

[2] Mr. Scroggin's mother was a long-time employee of the Jefferson County Sheriff's Department.

b****." Mr. Scroggin wrapped Ms. Sharp's body in a curtain and placed it in the back of Mr. Smith's truck. Mr. Smith, Mr. Scroggin, and Ms. McVay then disposed of the body and drove to a deer camp where they burned the curtain and Ms. Sharp's clothes. Ms. McVay never saw Ms. Sharp's hands tied.

Ms. Abeyta also testified that she prostituted herself in exchange for drugs and had previous felony convictions. Like Ms. McVay, Ms. Abeyta admitted that she had previously lied to police about the murder. She also did not see Ms. Sharp's hands tied. Ms. Abeyta testified that she and Ms. McVay were performing oral sex on Mr. Smith when Ms. Sharp walked by a dresser with crack cocaine on it. Mr. Smith then accused Ms. Sharp of stealing drugs, which Ms. Sharp denied. Mr. Smith grabbed Ms. Sharp by the throat and held her against a wall until she collapsed. Ms. Abeyta stated that Mr. Scroggin took her home before anyone disposed of the body.

Mr. Scroggin testified that he was a convicted felon, and had told the police a number of different stories about the murder. He testified at trial that the he, Mr. Smith, Ms. McVay, Ms. Abeyta, and Ms. Sharp were at his mother's house the night of the murder. They were all smoking crack cocaine, but Mr. Scroggin denied having sex with any of the women. He did not witness the murder, but heard screaming. He also heard Mr. Smith say he thought he had "killed the b****." Mr. Scroggin took Ms. Abeyta home and returned to his mother's house. Then Mr. Scroggin, Mr. Smith, and Ms. McVay disposed of Ms. Sharp's body and drove to an abandoned deer camp. While

there, they smoked more crack cocaine and burned Ms. Sharp's clothes and the curtain used to cover her body.

This testimony was enough to convict Mr. Smith of second-degree murder. No forensic evidence connected Mr. Smith to the crime. Tire tracks found near Ms. Sharp's body did not match the tires on Mr. Smith's truck. The State could not identify any of the contents of the burn pile at the deer camp. Semen found on Ms. Sharp's body was insufficient for DNA analysis. DNA found within Ms. Sharp's body excluded Mr. Smith as the source.

The State originally arrested Mr. Scroggin for Ms. Sharp's murder. (#24, p. 33) At that time, Mr. Smith alleges, Mr. Scroggin had visible scratches on his arm. (#9, p. 4-5) DNA found underneath Ms. Sharp's fingernails, however, did not match Mr. Scroggin's DNA. (#24, p. 62)

Mr. Smith alleges that the Jefferson County Sheriff's Department impounded Mr. Scroggin's truck, but released it to his mother, a long time Jefferson County Sheriff's Department employee, six days later, without ever processing the truck for evidence. (#9, p. 5) A State Crime Lab analysis, however, listed samples taken from Mr. Scroggin's truck. (#24, p. 64)

Mr. Smith filed a wrongful imprisonment lawsuit after his release from prison when the State first *nolle prossed* his case. (#9, p. 3) He alleges that this lawsuit motivated the State to refile the murder charge against him.

Several years after his conviction, Mr. Smith took a polygraph examination. According to the report, Mr. Smith's responses led the examiner to believe that Mr. Smith did not cause Ms. Sharp's death. (#9, p. 19-20; #22, p. 25-27, 40-42)

A. *Jury Selection*

Mr. Smith alleges jurors in his trial had improper knowledge of the case and personal relationships with the prosecutors, Pine Bluff Police Department, State Police, and the Jefferson County Sheriff's Department. He admits that he did not raise this issue in his appeal. (#1, p. 7)

By failing to raise this issue with the State courts, Mr. Smith procedurally defaulted this claim. Generally, procedural default would preclude review. This Court, however, will address all the grounds presented for relief. See *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir.1999) (*en banc*) (in the interest of judicial economy, a Court may address the merits of a petition despite likely procedural default).

Mr. Smith alleges that the State's attorney "hand picked" the jury and had direct contact with some of the jurors prior to trial. (#9, p. 7) He also alleges that the jury "wasn't safe from being tainted and tampered with" and had prior knowledge of the crime. (#9, p. 8)

In well over 500 pages of documents and argument Mr. Smith filed in support of his petition, he was unable to produce any support for this claim. (#1, #9, #22, #24, #26, #27, and #28) There is no testimony and not a single affidavit regarding this issue. Mr.

Smith did not describe the alleged contact with jurors, how the State "hand picked" them, the potential taint and tampering, or their prior knowledge of the case. Mr. Smith has not provided any basis for the Court to grant habeas relief on this issue.

    B.    *DNA Evidence*

Mr. Smith alleges that DNA evidence proved he was not connected to the murder. DNA alone, however, does not prove or disprove guilt or innocence. *District Attorney's Office for Third Judicial Dist. v. Osborne,* 557 U.S. 52, 129 S.Ct. 2308, 2316 (2009). As a Crime Lab analyst testified at trial, no DNA evidence connected Mr. Smith to the crime.[3] (#28, p. 52) Semen on vaginal slides and swabs did not match Mr. Smith's DNA (#27, p. 77, 86); nor did the DNA mixture found underneath Ms. Sharp's fingernails match Mr. Smith's. (#24, p. 62) Despite the lack of DNA evidence connecting Mr. Smith to the crime, the jury found him guilty.

Certainly, the DNA evidence in this case did not help the State's case. But a lack of DNA evidence connecting Mr. Smith to the crime does not raise an issue for federal habeas relief. There is no substantive federal right to DNA evidence. *Id*. at 2321-2322. Mr. Smith's claim in this regard appears to be more of an argument for insufficiency of the evidence.

---

[3] The record shows that each party to the criminal trial had access to all of the DNA testing performed by the State.

C. *Witness Testimony*

Mr. Smith alleges that the three key State eyewitnesses lied under oath on several occasions. This is absolutely true, and that fact was before the jury. Again, Mr. Smith has not identified how this fact entitles him to habeas relief.

Each of the three eyewitness–Mr. Scroggin, Ms. McVay, and Ms. Abeyta– testified that they lied multiple times before trial about the crime. (#22, p. 55-63; #24, p. 14-15, 33-44, 48-55; #26, p. 31-33) In addition to the lies, each eyewitness gave testimony that the jury could have considered as incentives to continue to lie. Ms. McVay admitted that the State had decided not to revoke her probation because she was testifying. (#22, p. 60) Mr. Scroggin testified that he had been out of prison for barely a month before the murder occurred and had returned to prison for a parole violation related to the murder. (#24, p. 47, 50) And Ms. Abeyta testified that the State had allowed her to continue to work as a prostitute. (#26, p. 32) None of this, however, entitles Mr. Smith to habeas relief. As with his other claims, it appears this is another argument regarding sufficiency of the evidence.

D. *State Crime Lab Evidence*

Mr. Smith alleges that State Crime Lab evidence contradicted witness testimony. This statement is also true. The State Crime Lab analyst testified that bruising on Ms. Sharp's wrists showed that her hands were tied when she was strangled. All three of the State's eyewitnesses denied seeing Ms. Sharp's hands tied at any point. Two of the

witnesses testified that Mr. Smith drove his truck to dump Ms. Sharp's body. Tire tracks from where Ms. Sharp's body was found, however, did not match Mr. Smith's tires.

Inconsistent testimony, standing alone, does not entitle an individual to habeas relief. Rather, questions of the reliability and consistency of witness testimony are properly left to juries. *United States v. Peoples*, 250 F.3d 630, 639 (8th Cir. 2001) (citing *United States v. Aguayo-Delgado*, 220 F.3d 926, 935 (8th Cir. 2000).

E. *Civil Lawsuit*

In his Amended Petition, Mr. Smith alleges that the case against him was brought in retaliation for a civil lawsuit he filed for unlawful detention after the first case against him was *nolle prossed*. Mr. Smith has stated repeatedly, however, that the case against him was to prevent Mr. Scroggin from being charged and convicted for the murder, because Scroggin's mother was a long-time Jefferson County Sheriff's Department employee.

Mr. Smith has failed to support this claim, or state how, if true, it would entitle him to habeas relief. In the context of his criminal trial and conviction, Mr. Smith's civil lawsuit was irrelevant.[4]

---

[4] Shortly after his murder conviction, Mr. Smith moved to voluntarily dismiss the defendants in his civil suit who were involved in the criminal investigation. *Smith v. Fontaine, et al.*, Case No. 5:04CV100 (E.D. Ark., related defendants dismissed August 25, 2005).

F.  *Sufficiency of the Evidence*

Mr. Smith's claims for relief, in essence, contest the sufficiency of the evidence against him.  To prevail on a sufficiency-of-evidence claim, Mr. Smith must show that, based on the trial record, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781 (1979).

The jury in this case found Mr. Smith guilty of second-degree murder.  A person is guilty of second-degree murder when he: (1) knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or (2) with the purpose of causing serious physical injury to another person, he causes the death of another person.  ARK. CODE ANN. § 5-10-103(a)(1)-(2).

The evidence before the jury included ample evidence of guilt, though much of the evidence was contradictory.  DNA was found on Ms. Sharp, but it did not match Mr. Smith's DNA.  Forensic evidence led a State Crime Lab analyst to believe that Ms. Sharp's hands were tied before her death, but none of the three eyewitnesses saw Ms. Sharp's hands tied.  Two eyewitnesses testified that Mr. Smith drove his truck to dump Ms. Sharp's body, but tire tracks found at the scene did not match the treads from the tires on Mr. Smith's truck.  The jury could have drawn inferences in Mr. Smith's favor when considering this evidence; but this Court is not free to second-guess the inferences the jury did draw.  When the record contains conflicting evidence, the reviewing Court must

assume that the trier of fact resolved conflicts in favor of the prevailing party. *Jackson*, 443 U.S. at 326; see also *Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851 (1995).

Importantly, other evidence in the record strongly supports a finding of guilt. A State Crime Lab analyst testified that Ms. Sharp died by strangulation. Ms. Abeyta testified that Mr. Smith grabbed Ms. Sharp by the throat and held her against a wall until she collapsed. (#26, p. 30) Ms. McVay saw Mr. Smith attack Ms. Sharp; heard him say that he thought he had killed her; and saw Ms. Sharp's dead body. (#22, p. 54) Mr. Scroggin heard Mr. Smith say that he thought he had killed Ms. Sharp, and he helped dump her lifeless body. (#24, p. 49) The testimony of any one of the eyewitnesses, if believed by the jury, would be sufficient to support a verdict of guilt. *Gibbs v. Kemna*, 192 F.3d 1173, 1176 (8th Cir. 1999). The fact that this testimony came from three crack cocaine using felons– who all admitted to lying about the murder on multiple occasions– is an issue of credibility, and credibility is for the jury to decide. *Id*. (citing *Daniels v. Wood*, 819 F.2d 195, 198 (8th Cir. 1987)). The jury was made aware of the credibility problems with these witnesses. And in fairness to the prosecution, virtually any eye witness who was at this gathering of prostitutes and illegal drug users would likely have credibility problems. Mr. Smith's sufficiency of the evidence claim fails.

## V.    Conclusion

The Court recommends that Judge Miller dismiss Mr. Smith's petition for writ of habeas corpus, with prejudice.

DATED this 24th day of February, 2012.

                                       _____
                                       UNITED STATES MAGISTRATE JUDGE